IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WACOM CO., LTD.,<br><br>        Plaintiff,<br><br>        v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, or UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A,"<br><br>        Defendant. | **Case No.: 1:25-cv-014083**<br><br>**Judge Sunil R. Harjani**<br><br>**Magistrate Judge Gabriel A. Fuentes**<br><br>**JURY TRIAL DEMAND** |

### *EX PARTE* MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A <u>TEMPORARY INJUNCTION AND EXPEDITED DISCOVERY</u>

Plaintiff Wacom Co., Ltd. ("Plaintiff") submits this *ex parte* Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction and expedited discovery (the "TRO Motion").

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION.................................................................................................................. | 1 |
| II. | STATEMENT OF FACTS..................................................................................................... | 2 |
| | A. Plaintiff's Patent and Genuine Products ...................................................................... | 2 |
| | B. Defendant's Unlawful Activities .................................................................................. | 2 |
| III. | ARGUMENT........................................................................................................................... | 2 |
| | A. Applicable Standards .................................................................................................... | 3 |
| |    1. Standards for Likelihood of Success on the Merits as to Patent Infringement and Unfair Competition Claims .................................................................................... | 4 |
| |    2. Standards for Remaining Factors........................................................................... | 5 |
| | B. Plaintiff Will Likely Succeed on the Merits ................................................................. | 6 |
| |    1. Patent Infringement................................................................................................ | 7 |
| |    2. Unfair Competition ................................................................................................ | 8 |
| | C. Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief.............................. | 9 |
| |    1. Plaintiff Will Suffer Immediate and Irreparable Harm by Losing Patent Exclusivity ....... | 10 |
| |    2. Plaintiff's Ability to Collect Monetary Damages Is, at Best, Uncertain ............................ | 10 |
| |    3. Plaintiff Will Suffer Immediate and Irreparable Harm by Losing Its Market Share .......... | 11 |
| | D. The Balancing of Harms Favors Plaintiff ................................................................. | 12 |
| | E. A Temporary Restraining Order Will Not Harm the Public Interest...................................... | 13 |
| IV. | THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE............................................... | 14 |
| | A. A Temporary Restraining Order Immediately Enjoining Defendant from Further Infringement of Plaintiff's Patent Is Appropriate ...................................................................... | 14 |
| | B. Plaintiff is Entitled to Expedited Discovery ......................................................... | 14 |
| V. | A BOND SHOULD SECURE THE INJUNCTIVE RELIEF............................................. | 15 |
| VI. | CONCLUSION ................................................................................................................... | 15 |

**I.     INTRODUCTION**

Plaintiff Wacom Co., Ltd. ("Plaintiff") is requesting temporary *ex parte* relief based on an action for patent infringement and unfair competition against the Defendant identified on Schedule A to the First Amended Complaint [18] ("1st Am. Compl."). As alleged in Plaintiff's First Amended Complaint, Defendant is a foreign entity making, using, importing, selling, and/or offering for sale products that infringe upon Plaintiff's federally granted patents (collectively, the "Unauthorized Products") through at least the fully interactive e-commerce store operating under the seller alias identified in Schedule A to the First Amended Complaint (the "Seller Alias").

Defendant runs a sophisticated foreign infringement operation and has targeted sales to Illinois residents by setting up and operating e-commerce stores using multiple Seller Aliases through which Illinois residents can purchase Unauthorized Products, likely already shipped to be within U.S. borders. Defendant takes advantage of a set of circumstances, including the mass reach afforded by the Internet, the obfuscation provided by nominally different entities, and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Further, Defendant attempts to avoid liability by operating under one or more Seller Aliases to obfuscate its identity and the full scope and interworking of its operation and preemptively ship goods into the U.S. to be distributed either through third party marketplaces or other shipping methods. Plaintiff is forced to file this action to combat Defendant's infringement of Plaintiff's Patents, as identified in the Complaint and in copies of the issued patents attached thereto as Exhibits 1 through 3 [18-2]-[18-4], prevent further unfair methods of competition of Defendant, as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Defendant's ongoing unlawful activities should be restrained, and Plaintiff respectfully requests this Court to issue an *ex parte* Temporary Restraining Order.

## II. STATEMENT OF FACTS

### A. Plaintiff's Patent and Genuine Products

Plaintiff is an entity organized under the laws of Japan with its principal place of business at 2-510-1, Toyonodai, Kazo-shi, Saitama, Japan and is the owner, by assignment, of Plaintiff's Patents. *See* 1st Am. Compl. ¶¶ 2, 4, 6, 9; 1st Am. Compl. Exs. 1-3. Plaintiff sells its products, including a brand and product line that embodies Plaintiff's Patents (collectively, "Plaintiff's Products"), direct-to-consumer through its website, through various retailers, and through its stores on third-party marketplaces. 1st Am. Compl. ¶ 16. Plaintiff provides notice of its patent rights on its product listings on Plaintiff's website. *Id.* Plaintiff's Patents were and are valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282. *Id.* ¶¶ 2, 4, 6.

### B. Defendant's Unlawful Activities

The success of Plaintiff's Products has resulted in significant infringement of Plaintiff's Patents. *Id.* ¶ 17. Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), including the e-commerce store operating under the Seller Alias. *Id.* The Seller Alias targets consumers in this Judicial District and throughout the United States. *Id.* ¶ 14. Defendant is a foreign entity that is also connected to another foreign entity importing infringing goods into the United States for sale on third-party marketplaces at a larger scale. *See id.* ¶¶ 10, 12; 1st Am. Compl. Ex. 4 [18-5].

## III. ARGUMENT

Defendant's purposeful, intentional, and unlawful conduct is causing and, unless enjoined, will continue to cause irreparable harm to Plaintiff, along with its loss of current and future sales,

market share, reputation, and goodwill. To stop this irreparable harm, Plaintiff respectfully requests that this Court issue a temporary restraining order and, following any necessary hearing, a preliminary injunction ordering, among other things, the immediate cessation of sales of the infringing products, a recall of all infringing products currently on store shelves, and a cessation of advertisements for the infringing products. Without the relief requested by this Motion, Defendant's unlawful activity will continue unabated, and Plaintiff will continue to suffer irreparable injury for which there is no adequate remedy at law.

### A. Applicable Standards

Courts have the discretion to issue an injunction to "prevent the violation of any rights secured by patent." 35 U.S.C. § 283.[1] The right to exclude others is among the most valuable rights – if not the most valuable right – secured by a patent grant. *See Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude" (internal citations omitted)). The purpose of a preliminary injunction is to preserve the status quo by preventing future infringement pending a determination on the merits. *Abbott Labs. v. Sandoz*, 544 F.3d 1341, 1344-45 (Fed. Cir. 2008) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)).

Courts within this District apply the same standard for granting a temporary restraining order as for granting a preliminary injunction. *See, e.g.*, *Long v. Bd. Of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) ("standards for issuing temporary restraining orders are

---

[1] With respect to the applicable standard, the Federal Circuit has explained that a preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. § 283 "involves substantive matters unique to patent law and, therefore, is governed by the law of [the Federal Circuit]." *Revision Military, v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012) (quoting *Hybritech v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988)).

identical to the standards for preliminary injunctions"). Generally, the party seeking an injunction must show that: (1) the movant is likely to succeed on the merits; (2) irreparable harm will result if the relief is not granted; (3) the balance of hardships to the parties weighs in the movant's favor; and (4) the public interest is best served by granting the injunctive relief. *See Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Abbott Labs v. Sandoz, Inc.*, 500 F. Supp. 2d 807, 815-16 (N.D. Ill. 2007) (citing *Polymer Techs., v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. (1996)).

### 1. Standards for Likelihood of Success on the Merits as to Patent Infringement and Unfair Competition Claims

Regarding the first factor, success on the merits means demonstrating that it is likely that the patent is infringed and that the patent will survive any invalidity challenges. *See Titan Tire*, 566 F.3d at 1376. However, issued patents are presumed valid, and that presumption applies at trial as well as before trial. *Id*. at 1376-77. "Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Id*. at 1377 (citing *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001) and *Canon Comp. Sys., v. Nu-Kote Int'lm Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998)).

Infringement of a utility patent "involves a two-step process: (1) 'the court determines the scope and meaning of the asserted claims'; and (2) 'the properly construed claims are compared to the allegedly infringing device.'" *Edge Sys. LLC v. Aguila*, 635 Fed.Appx. 897, 902 (Fed. Cir. 2015) (quoting *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998)). Plaintiff need only show a likelihood of infringement of one or more claims of the asserted patent to show a likelihood of success. *Edge Sys.*, 635 Fed.Appx. at 902.

While "[u]nfair competition originally was an extension of trademark law," the Supreme Court case *International News Service v. Associated Press*, "expanded the parameters of unfair competition beyond 'palming off' by refusing to 'concede that the right of equitable relief is confined to [trademark] class of cases,' although those cases were still the most common." *Wilson v. Electro Marine Sys.*, 915 F.2d 1110, 1118 (7th Cir. Oct. 4, 1990) (*quoting* 248 U.S. 215, 241-242 (1918)). Some courts have interpreted this to mean that the "'essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another. Central to this notion is some element of bad faith.'" *Id.* (*quoting Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980)). The Seventh Circuit also stated that this body of non-trademark unfair competition law "has evolved around the theory that at times business competitors engage in activity which, while perhaps not actionable under other commercial tort theories, so 'shocks judicial sensibilities' or violates 'standards of commercial morality'" that it cannot be tolerated. *Id.* (*citing Margarete Steiff, Inc. v. Bing*, 215 F. 204 (D.N.Y. 1914); *People ex rel. Mosk v. National Research Co.*, 201 Cal. App. 2d 765 (1962)).

Additionally, other areas of U.S. law define "unfair methods of competition" to include patent infringement. Section 337 of the Tariff Act of 1930 defines unfair methods of competition to include "infringe a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B). Here, as outlined below, Defendant has engaged in unfair competition not only by infringing upon Plaintiff's patent rights but doing so in a manner that is designed to evade prosecution of that claim and to shield potentially collectable assets from the Court's jurisdiction.

### 2. Standards for Remaining Factors

The second factor, irreparable harm, means harm that cannot be fully remedied by a final judgment in the plaintiff's favor. *See H-D, USA, LLC v. P'ships & Unincorporated Ass'ns*

*Identified on Schedule "A"*, No. 21-C-3581, 2021 U.S. Dist. LEXIS 187253, at *10 (N.D. Ill. Sept. 24, 2021) (citing *Kraft Foods Brands LLC v. Cracker Barrel Old Country Stores*, Inc., 735 F.3d 735, 740 (7th Cir. 2013). Irreparable harm can be shown by, for example, loss of customers and market share, particularly where the specific loss of customers is not easily quantifiable, and loss of goodwill and reputation. *See e.g.*, *Life Spine, v. Aegis Spine, Inc.*, 8 F.4th 531, 545-45 (7th Cir. 2021). Likewise, while the Supreme Court has rejected a presumption of irreparable harm stemming from the right to exclude in patent cases (*see eBay, v. MercExchange, LLC*, 547 U.S. 388 (2006)), that holding does not "swing the pendulum in the opposite direction" and thus "[w]hile a patentee's right to exclude alone cannot justify an injunction, it should not be ignored either." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1147, 1149 (Fed. Cir. 2011).

The third factor, the balance of hardships, is measured by weighing the possibility of irreparable harm to the non-moving party if the injunction is issued, balanced against the irreparable harm the moving party will suffer if the relief is denied. *See Ty, v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). This has been described as a "sliding scale" analysis. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). The more likely Plaintiff is to succeed on the merits, the less the balance of harms needs to weigh in its favor. *Chicagoland Aviation, LLC v. Todd*, Case No. 12-c-1139, 2012 U.S. Dist. LEXIS 167796, *6 (N.D. Ill. November 27, 2012) (citing *Christian Legal*, 453 F.3d at 859). The Court weighs these factors, "sitting as would a chancellor in equity," when deciding whether to grant the requested injunction. *Ty, Inc.*, 237 F.3d at 895 (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)).

### B. Plaintiff Will Likely Succeed on the Merits

Plaintiff alleges infringement of Plaintiff's Patents and unfair methods of competition. Plaintiff is likely to succeed on all counts.

1. **Patent Infringement**

Defendant infringes at least one claim of each of Plaintiff's Patents. *See* 1st Am. Compl. ¶¶ 36-38, 45-47, 54-56; 1st Am. Compl. Exs. 7-9 [18-8]-[18-10]. The claim chart attached to the First Amended Complaint as Exhibit 7 shows a representative Unauthorized Product meeting all of the claim elements of claim 13 of the '816 patent. The claim chart attached to the First Amended Complaint as Exhibit 8 shows a representative Unauthorized Product meeting all of the claim elements of claim 11 of the '130 patent. The claim chart attached to the First Amended Complaint as Exhibit 9 shows a representative Unauthorized Product meeting all of the claim elements of claim 6 of the '041 patent. The screenshot evidence attached to the First Amended Complaint as Exhibit 5 provides evidence sufficient to show that the Defendant's Unauthorized Products infringe Plaintiff's Patents.

Accordingly, Plaintiff has demonstrated infringement of the requisite at least one claim of each of Plaintiff's Patents. Consequently, Plaintiff has shown a high likelihood of success on its claim for infringement of Plaintiff's Patent. With respect to validity, the Court must only "make an assessment of the persuasiveness of the challenger's evidence" – if presented – "recognizing that it is doing so without all evidence that may come out at trial." *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882-83 (Fed. Cir. 1987). The Court need not resolve validity at this early stage. *Id*. At this point, because Defendant has not come forth with any challenge to the validity of Plaintiff's Patents, the presumption of validity attached to all issued patents controls and is enough to establish a likelihood that the patent will survive an invalidity challenge. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) ("[I]f a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden

of showing a likelihood of success on the validity issue").

### 2. Unfair Competition

Plaintiff has demonstrated a likelihood of success on the merits for its unfair competition claim as well. Plaintiff has shown that Defendant misclassifies its products to avoid paying the full tariff required for importing the Unauthorized Products into the U.S. *See* 1st Am. Compl. ¶ 30. Because of this, Defendant has an unfair competitive advantage when it comes to pricing because its products can be priced lower than they would be if Defendant were paying the correct amount of tariffs. *Id.* Furthermore, Defendant is a foreign entity located in China. *Id.* ¶ 10. Defendant's use of one or more Seller Aliases, sales through third-party marketplaces that permit obfuscation of identity, and shipments of Unauthorized Products into the U.S. are collectively unfair methods of competition under Illinois law, as it "misappropriated the labors and expenditures" of Plaintiff by trying to profit off of Plaintiff's patented inventions while evading traditional enforcement mechanisms designed for such behavior. This is particularly true because Defendant's infringing schemes are orchestrated in a manner to evade U.S. Patent and Trade laws and thereby shield its assets from the jurisdiction of U.S. Courts and enforcement agencies.

For example, Defendant not only hides its true identity through the use of one or more Seller Aliases, but given that Defendant is a Chinese entity, Plaintiff has limited recourse to prevent Defendant's unfair competition because Chinese entities are frequently judgment proof. Chinese courts rarely enforce foreign judgments.[2] Defendant is well aware that its status as a foreign entity places it outside of the reach of conventional methods and this contributes to its willingness to act with impunity. Moreover, Defendant likely has already shipped a number of

---

[2] Even when they are enforced, it is typically a lengthy process. China only enforced its first U.S. judgment this past August, for a case that was initially decided in July 2016. *See* https://ipfray.com/chinese-court-enforces-73-million-u-s-judgment-door-opens-for-more-foreign-order-enforceability-including-upc/.

Unauthorized Products into the U.S. to allow for quick fulfilment, making recourse through the International Trade Commission impossible, since the goods are shipped to the United States and immediately placed in Amazon's possession.

Even if Defendant did correctly identify itself on Amazon or shipped Unauthorized Products under a known entity, the Unauthorized Products are being imported into the United States under incorrect tariff codes – allowing Defendant to sell goods at a cheaper price in the American market, increase its profits from sales of Unauthorized Products, and gain an unfair and unlawful competitive advantage over entities abiding by U.S. trade law, like the Plaintiff. *Id.* ¶ 30. Defendant's unfair tactics prevent any other recourse by Plaintiff. Plaintiff's ability to go to the International Trade Commission is limited as it is unclear when the products are arriving in the U.S. and though whom. Even if Plaintiff had such information, that would not prevent the sale of infringing goods already in U.S., including at Amazon warehouses and distribution centers.

Such behavior by Defendant, "violates 'standards of commercial morality' that it cannot be tolerated." Defendant is a foreign entity which enables it to hide its identity through the use of seller aliases on third-party marketplaces, ship goods to U.S. warehouses and third- party marketplaces distribution centers without paying the proper tariffs on its goods, and sell products which infringe Plaintiff's Patents on third-party marketplaces to U.S. customers. Such unlawful obfuscation of fair competition must be prevented.

### C. Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief

The second element of the injunction analysis, whether Plaintiff will suffer irreparable harm absent the requested relief, "seeks to measure harms that no damages payment, however great, could address." *Celsis in Vitro, Inc., v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). Here, Plaintiff will be immediately and irreparably harmed if Defendant is not enjoined from

making, using, selling, offering for sale, and importing the Unauthorized Products. As demonstrated in Plaintiff's Complaint and accompanying evidence, due to Defendant's actions, Plaintiff is suffering difficulty in entering what should be an otherwise exclusive market, damage to its reputation, and loss of current and future sales. *See* 1st Am. Compl. ¶¶ 32-34. "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Id.*; *see Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013).

### 1. Plaintiff Will Suffer Immediate and Irreparable Harm by Losing Patent Exclusivity

The ability to exclude others is fundamental to the patent right. *See Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d at 1383 ("Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude"); *Smith Int'l, v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) ("The very nature of the patent right is the right to exclude others"). That right is rendered meaningless where others are permitted to continue its infringement. This is particularly true because Plaintiff has its patent right only for a limited time. Thus, the inability to exclude others for any period of time during the term of the patent – including during the period of time necessary to reach a final judgment in this case – constitutes harm for which Plaintiff cannot be adequately compensated at law. Therefore, an injunction is necessary in order to preserve Plaintiff's right to exclude others from practicing its invention.

### 2. Plaintiff's Ability to Collect Monetary Damages Is, at Best, Uncertain

Defendant is located in the People's Republic of China. 1st Am. Compl. ¶ 10. Defendant also primarily sells Unauthorized Products through online marketplace platforms like Amazon. This permits Defendant a certain level of anonymity and evasiveness. Because Defendant is an

entity without readily apparent domestic assets and operating through an online marketplace that shields its operations, it is reasonable to infer that collecting monetary damages against Defendant will be difficult, and potentially impossible. Such factors have been held to be significant in determining that a patent owner will suffer irreparable harm. *See Peng v. Partnerships*, No. 21-cv-1344, 2021 U.S. Dist. LEXIS 174254, at *7-8 (N.D. Ill. Sept. 14, 2021) (citing *Robert Bosch LLC*, 659 F.3d at 1155-56).

### 3. Plaintiff Will Suffer Immediate and Irreparable Harm by Losing Its Market Share

Additionally, absent an injunction, Plaintiff will suffer the loss of what should be an exclusive market share. Loss of market share constitutes irreparable injury for which Plaintiff has no adequate remedy at law. *See Black & Decker v. Robert Bosch Tool Corp.*, No. 04-C-7955, 2006 U.S. Dist. LEXIS 86990 (N.D. Ill. Nov. 29, 2006) ("Loss of market share is a key consideration in determining whether a plaintiff has suffered irreparable harm"). Plaintiff is being prevented from occupying what should be an exclusive market due, in part, to Defendant's infringing activity and unfair commercial tactics which evade traditional enforcement mechanisms while selling infringing products, imported from other countries, throughout the United States. Plaintiff has already lost significant market share in two key markets over the last two fiscal years, a significant portion of which is due to Defendant's sales of Unauthorized Products. 1st Am. Compl. ¶ 32 and 1st Am. Compl. Ex. 6 [18-7] (which were both redacted and filed under seal and show which markets Plaintiff lost market share in, how much market share was lost, and Defendant's (and related entities) market share due to Unauthorized Products). If this market share continues to be lost due to Defendant's unlawful acts, it might never be recovered. Such loss cannot be remedied by mere monetary damages (or even a permanent injunction issued at the end of this case) and thus constitutes irreparable harm. *See Canon, v. GCC*

*Intern. Ltd.*, 2006-1615, 2008 U.S. App. LEXIS 2429, *11 (Fed. Cir. 2008) ("Due to the difficulty (if not impossibility) of determining the damages resulting from price erosion and loss of market share, an award of money damages would not be sufficient").

Here, it is clear that Plaintiff will continue to lose what should be an exclusive market share if Defendant is not enjoined from continuing its infringing activities. Plaintiff and Defendant are direct competitors and Defendant's Unauthorized Products are unlawfully sold through the similar channels of trade as Plaintiff's Products. *See, e.g.*, 1st Am. Compl. Ex. 5. Additionally, the vast majority of customers will purchase all of the products that embody Plaintiff's Patents (if they purchase more than one) from a single source, likely in a single transaction. Thus, each sale of an Unauthorized Product made by Defendant is a sale that Plaintiff cannot make.

To the extent a customer needs to make additional purchases, the loss of that initial sale results in the loss of the potential to make the ongoing sales for replacements due to damage or loss of the initial products that embody Plaintiff's Patents. Moreover, because the online marketplace sales are, in part, fueled by customer review, influencer referrals, and word of mouth, it is reasonable to infer that the sale and use of Plaintiff's Products increases the exposure of Plaintiff's Products to new customers. This leads to a continuous cycle of harm in the form of loss of potential customers, which in turn reduces Plaintiff's hard-earned market share. *See generally Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed. Cir. 2011) (considering loss of access to potential customers as evidence of irreparable harm). Consequently, Plaintiff's market share is actively being harmed by Defendant's continued unlawful conduct.

### D. The Balancing of Harms Favors Plaintiff

The third factor, the balance of hardships, favors Plaintiff as well. As noted above, the stronger the showing of likelihood of success on the merits, the less the balance of harms needs to

weigh in Plaintiff's favor. *See Chicagoland Aviation, LLC v. Todd*, Case No. 12-c-1139, 2012 U.S. Dist. LEXIS 167796, *6 (N.D. Ill. November 27, 2012). In other words, "[t]he magnitude of the threatened injury to the patent owner is weighed, in the light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error." *H.H. Robertson Co. v. United Steel Deck, Inc*., 820 F.2d 384, 390 (Fed. Cir. 1987) (overturned on other grounds by *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 977 (Fed. Cir. 1995)).

As set forth above, Plaintiff has made a strong showing of a likelihood of success on the merits of its patent infringement claim; thus, the balance of hardships need only weigh slightly in its favor. Additionally, any potential harm to Defendant is merely a consequence of Defendant's own infringing activities and therefore should not be considered when weighing the harms. In contrast, Plaintiff will suffer immediate and irreparable harm for which there is no adequate remedy at law if this injunction is not granted, as set forth above. Accordingly, the balance of harms weighs strongly in favor of Plaintiff.

### E. A Temporary Restraining Order Will Not Harm the Public Interest

The starting point for analysis of the public interest is favoring protection of a patentee because of the "strong public policy favoring the enforcement of patent rights*." PPG Indus., v. Guardian Indus. Corp*., 75 F.3d 1558, 1567 (Fed. Cir. 1996). Thus, the inquiry should be "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech, v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1998). Here, there is no public interest, let alone a critical one, that will be injured by the grant of the requested relief. The public has an interest in the functioning of its patent system and in encouraging fair business practices. *See PPG*, 75 F.3d at 1567. Accordingly, no public interest will be harmed by an injunction.

**IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE**

The Patent Act authorizes courts to "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The Illinois Consumer Fraud and Deceptive Business Practice Act authorizes courts to issue injunctive relief "where appropriate." 815 ILCS 505/10a(c).

**A. A Temporary Restraining Order Immediately Enjoining Defendant from Further Infringement of Plaintiff's Patent Is Appropriate**

Plaintiff requests a temporary injunction requiring Defendant to immediately cease all making, using, importing, selling, and/or offering to sell Unauthorized Products on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the Plaintiff, including loss of market share and erosion of Plaintiff's patent rights, and to prevent Defendant from continuing to benefit from infringing upon Plaintiff's Patents. The need for *ex parte* relief is magnified in today's global economy where infringers can operate anonymously over the Internet. Plaintiff is unable to determine the full scope of Defendant's infringement of Plaintiff's Patents. Many courts have authorized immediate injunctive relief in similar cases involving patent infringement. *See, e.g., AJ's Nifty Products. v. The Individuals, et al.*, No. 24-cv- 02375 (N.D. Ill. Apr. 30, 2024) (unpublished) (Order granting Ex Parte Motion for Temporary Restraining Order).

**B. Plaintiff is Entitled to Expedited Discovery**

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further,

courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2)).

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts and the additional seller aliases Defendant uses for its infringing operations. The expedited discovery requested in Plaintiff's proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these seller aliases and financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g.*, *AJ's Nifty Products. v. The Individuals, et al.*, No. 24-cv-02375 (N.D. Ill. Apr. 30, 2024) (unpublished). Plaintiff's restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of patent infringement claim, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than one thousand U.S. dollars ($1,000.00). *See, e.g., Not a Real Holding Company, Inc. v. The P'ships*, No. 22-cv-04779 (N.D. Ill Sep. 14, 2022) ($1,000 bond per defendant) (unpublished); *Peanuts Worldwide LLC v. The P'ships*, No. 21-cv-03525 (N.D. Ill. Jul 6, 2021) (unpublished) (same).

## VI. CONCLUSION

Due to the strong likelihood of success on the merits of Plaintiff's case and the irreparable harm that would result without an injunction, Plaintiff respectfully requests that its temporary restraining order be immediately granted.

| | |
|---|---|
| DATED: January 6, 2026 | Respectfully submitted,<br><br>/s/ Sameeul Haque<br>Sameeul Haque<br>Haque III Legal Practice, LLC<br>205 N. Michigan Ave., Ste. 810<br>Chicago, IL 60601<br>Tel. 847.401.6113<br>samee@h3lp.law<br><br>Syed M. Abedi (pro hac vice forthcoming)<br>Emily M. Ross (pro hac vice forthcoming)<br>Seed Intellectual Property Law Group LLP<br>701 Fifth Avenue, Suite 5400<br>Seattle, Washington 98104<br>Tel. 206-622-4900<br>SyedA@seedip.com<br>Emily.Ross@seedip.com<br><br>*Attorneys for Plaintiff*<br>*Wacom Co., Ltd.* |

#11355134.1

16